UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NACCO Industries, Inc., and** | ) | **CASE NO. 1:06-cv-3002** |
| **Apex Acquisition Corp.** | ) | |
| | ) | |
| Plaintiffs, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Applica Incorporated,** | ) | |
| **Harbert Management Corp.,** | ) | |
| **HMC Investors,** | ) | |
| **Harbinger Capital Partners** | ) | |
| **Offshore Mgr.,** | ) | |
| **Harbinger Capital Partners** | ) | |
| **Master Fund I,** | ) | |
| **HMC-New York, Inc.,** | ) | |
| **Harbinger Capital Partners Special** | ) | |
| **Situations GP,** | ) | **Memorandum Opinion and Order** |
| **APN Holding Company, Inc.,** | ) | |
| **APN Mergesub, Inc.,** | ) | |
| **David Maura,** | ) | |
| **Philip Falcone,** | ) | |
| **Raymond J. Harbert,  and** | ) | |
| **Michael D. Luce** | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Plaintiffs NACCO Indus., Inc. ("NACCO") and Apex Acquisition Corp. ("Apex")

1

(collectively "Plaintiffs") have filed a two-count Complaint against Defendants Applica Inc. ("Applica") and the "Harbinger Defendants."[1] Count I seeks relief for Violations of Securities Exchange Act § 13(d) and Securities & Exchange Commission Rule 14a-9. Count II is against only Applica for Violations of Securities Exchange Act of 1934 § 14(a) and Securities & Exchange Commission Rule 14a-9. This is a dispute over the ownership and control of Applica. Among other things, Plaintiffs ask the Court to enter a TRO enjoining Applica's December 28, 2006 shareholder meeting at which it is likely that Applica's voting shareholders will accept a $6.50 per share cash offer from the Harbinger Defendants. Plaintiffs claim that Harbinger's purchase was aided by illegal SEC 13(d) filings by Harbinger (Count I) and that the meeting was called through a false and misleading proxy statement filed by Applica (Count II).

**BACKGROUND**

Applica is Florida-based company that imports various brand name small appliances into the United States. According to Plaintiffs, Applica was experiencing mediocre financial results. One of NACCO's subsidiaries, Hamilton Beach, is also involved in the small appliance business. As early as Spring 2005, NACCO approached Applica about the possibility of a strategic transaction. The two entered into a confidentiality agreement in April 2005. They apparently negotiated but no deal came to fruition in 2005.

Harbinger purchased its first shares of Applica common stock on February 24, 2006. On

---

[1] Harbert Management Corp., HMC Investors, Harbinger Capital Partners Offshore Manager, Harbinger Capital Partners Master Fund I, HMC-New York, Inc., Harbinger Capital Partners Special Situations GP, APN Holding Company, Inc., APN Mergesub, Inc., David Maura, Philip Falcone, Raymond J. Harbert and Michael D. Luce.

February 28, 2006, Applica issued a press release disclosing that it had engaged Banc of America Securities LLC to explore "strategic alternatives to enhance shareholder value." By March 3, Harbinger had amassed 2,154,600 shares (8.9%) of Applica stock. At that point Harbinger exceeded the 5% threshold of Section 13 of the Securities Exchange Act of 1934 and SEC Rule 13d-1, triggering an obligation to file reports regarding "any plans or proposals which the reporting persons may have which relate to or would result in" further purchases or dispositions of the stock, extraordinary corporate transactions (such as merger, reorganization, etc.), or a number of other activities pertinent to the operation or control of the issuer.

Harbinger filed a Schedule 13G on March 13 indicating its share purchase and stating that the shares "were not acquired and are not held for the purpose of or with the effect of changing or influencing the control of the issuer of the securities and were not acquired and are not held in connection with or as a participant in any transaction to that effect." A similar amended Schedule 13G was filed on April 4 when Harbinger increased its stake in Applica to 3,815,000 shares (15.8%). By May 17, Harbinger's stake in Applica reached 6,000,000 shares (24.7%).[2] Harbinger then filed a Schedule 13D stating as follows:

> The Shares held by the Reporting Persons were acquired for, and are being held for, investment purposes only. The acquisitions of the Shares were made in the ordinary course of the Reporting Person's business or investment activities, as the case may be.
>
> The Reporting persons have no plan or proposal which relates to, or would result in, any of the actions enumerated in Item 4 of the instructions to Schedule 13D.
>
> A similar amendment to the Schedule 13D was filed on June 6, 2006, when Harbinger

---

[2] Once Harbinger passed the 20% threshold it lost its right to vote its shares without approval of the majority of Applica's other shareholders.

3

increased its stake in Applica to 7,502,800 shares (30.8%).  Around the same time, Harbinger started to acquire an interest in Salton, Inc. ("Salton"), another small appliance company.[3]  A June 21 amendment to the Schedule 13D noted that Harbinger owned 7,789,100 shares (32%) of Applica stock and amended its earlier statements as follows:

> The Reporting Persons have acquired their Shares of the Issuer for investment. The Reporting Persons evaluate their investment in the Shares on a continuing basis including, without limitation, for possible synergies with their other current investments.
>
> The Reporting Persons reserve the right to be in contact with members of the Issuer's management, the members of the Issuer's Board of Directors, other significant shareholders and others regarding alternatives that the Issuer could employ to maximize shareholder value.  The Reporting Persons also reserve the right to effect transactions that would change the number of shares they may be deemed to beneficially own.  Further, the Reporting Persons reserve the right to act in concert with any other shareholders of the Issuer, or other persons, for a common purpose should they determine to do so, and/or to recommend courses of action to the Issuer's management, the Issuer's Board of Directors and the shareholders of the Issuer.
>
> Other than as set forth above, the Reporting Persons have no plan or proposal as of the date of this filing which, other than as expressly set forth above, relates to, or would result in, any of the actions enumerated in Item 4 of the instructions to Schedule 13D.

On July 23, 2006, NACCO, Hamilton Beach and Applica executed a merger agreement, pursuant to which NACCO agreed to spin off Hamilton Beach.  Applica was to merge into Hamilton Beach, which was to become a separate publicly traded company named "Hamilton Beach, Inc."  Immediately following the spin-off, shares of Applica and NACCO shareholders

---

[3]  One of the Harbinger Defendants (Maura) eventually took a seat on Salton's board of directors.  Plaintiffs allege on information and belief that Salton and Applica entered into a confidentiality agreement, and that Maura passed confidential information on to Harbinger.

were to be converted into shares of Hamilton Beach, Inc. in a tax-free exchange.  For its part, Harbinger increased its stake a small amount to 7,921,200 shares and repeated its most recent statement in the accompanying Schedule 13D forms filed on August 3 and August 8.  On August 11, Harbinger submitted another Schedule 13D announcing that its stake had increased 9,201,000 shares (37.57%) and adding to its previous disclosures the following:

> Item 4 of Schedule 13D is amended to add the following information: On August 10, 2006, counsel for the Reporting Persons received a letter from counsel for the Issuer, a copy of which is included as Exhibit D to the Schedule 13D.  Other than as set forth in this Item 4, the Reporting Persons have no plan or proposal as of the date of this filing which, other than as expressly set forth above, relates to, or would result in, any of the actions enumerated in Item 4 of the instructions to Schedule 13D.[4]

An August 17 Schedule 13D disclosed that Harbinger's stake had increased to 9,611,600 (39.24%) and amended Item 4 to add that "[o]n August 14, 2006, the Master Fund sent a letter to the Issuer, a copy of which is included as Exhibit E, demanding that it be allowed to inspect the Issuer's shareholders list and certain other records."  The "other records" referenced in the letter included documents relating to the Applica-NACCO merger agreement.  The attached letter states that the purpose of the demand was to communicate with shareholders about:

> (i) Applica's recent announcements relating to the merger of Applica with a wholly-owned subsidiary of NACCO Industries, Inc. pursuant to the Merger Agreement and whether such merger is in the best interests of shareholders, and/or (ii) the potential acquisition of their shares . . . .

On September 14, 2006, Harbinger filed another amended Schedule 13D indicating that it had increased its stake in Applica to 9,830,800 shares (40.14%) and adding the following information to its earlier Item 4 filings:

---

[4]    The letter appears to reference discussions regarding Harbinger's voting rights under Florida statute.

>Item 4 of the Schedule 13D is amended to add the following information:
>
>The Reporting Persons have acquired their Shares of the Issuer in order to acquire control of the Issuer.  The Reporting Persons evaluate their ownership of the Shares on a continual basis including, without limitation, for possible synergies with their current investments.
>
>On September 14, 2006, the Master Fund and the Special Fund, together, sent a letter to the Issuer, a copy of which is incorporated by reference into Item 4 and included as Exhibit F, pursuant to which the Master Fund and the Special Fund offered to acquire all of the Shares of the Issuer at a price per share of $6.00 and in accordance with the terms of the letter.

On September 15, the Applica Board informed NACCO that it had determined that there was a reasonable likelihood that the Harbinger offer would constitute a "Superior Proposal" as defined in the Applica-NACCO merger agreement.  On September 22, Harbinger filed another Schedule 13D indicating that it had entered into a confidentiality agreement with Applica. Applica sent NACCO notice that it was terminating that Applica-NACCO merger agreement on October 10 and 12, and further stated that the agreement was terminated on October 19.  That same day, Applica issued a press release announcing the agreement with Harbinger.  Harbinger also submitted another amended Schedule 13D:

>The sentence of Item 4 of the Amendment No. 7 to the Schedule 13D, dated September 14, 2006, that reads "The Reporting Persons have acquired their Shares of the Issuer in order to acquire control of the Issuer" is hereby deleted in its entirety and replaced with the following: The Reporting Persons have changed their investment intent and now propose to acquire all of the Shares of the Issuer.[5]
>
>Applica filed a preliminary proxy statement in connection with Harbinger's offer on

---

[5] This amendment was apparently in response to claims by Plaintiffs that Harbinger's September 14 statement that it had "acquired their Shares of the Issuer in order to acquire control of the Issuer" was not a statement of present intent but instead trumped all of the prior statements that the shares were for investment purposes.

November 2, 2006. NACCO responded on November 14 with a lawsuit in Delaware Chancery Court against Applica and the Harbinger Defendants. The allegations of the Delaware suit focus in large part on Harbinger's Schedule 13 filings. ¶¶ 1, 3, 19-21, 33-45, 50, 56-59, 63-64, 67, 78, 80, 82 . The alleged impact of these filings was to undermine the NACCO merger and to mislead investors. This allowed Harbinger to acquire 40% of Applica's shares at a depressed price of $3.60 a share, giving it a strategic advantage in any contest for Applica. *See* ¶ 2. The Delaware suit also focuses on the Applica-NACCO merger agreement and Applica's alleged violations of the terms of that agreement. ¶¶ 25-32, 46-49, 51-55, 69, 73, 80. The Delaware suit pulls numerous allegations from the November 2 proxy statement (*e.g.,* ¶¶ 61, 65-66, 68, 70, 72), and accuses Applica of the following misstatements in the proxy statement:

> On November 2, 2006, Applica filed the Harbinger Proxy Statement. That filing (a) revealed Applica had misled Plaintiffs regarding its contacts with Harbinger and Harbinger's intentions; (b) failed to disclose Harbinger's false Schedule 13D submissions; (c) failed to disclose Applica's breaches of the Hamilton Beach Merger Agreement; and (d) failed to disclose Plaintiffs' claim that, as a result of these breaches, Applica's termination of the Hamilton Beach Merger Agreement was improper. The Harbinger Proxy Statement is thus itself materially false and misleading.

¶ 83; *see also* ¶ 80.

Count III of the Delaware Complaint alleges fraud against Harbinger for its allegedly false statements in the Schedule 13 filings. Count IV alleges a civil conspiracy involving the allegedly false statements in the Schedule 13 filings. The prayer for relief asked the Chancery Court to "preliminarily and permanently restrain Applica, and its directors, officers, employees, and agents from consummating the proposed transaction with Harbinger" and to "order the Harbinger Defendants to divest themselves of those shares of Applica which they obtained while their false Schedule 13Gs and 13Ds were on file . . . ."

Applica amended its preliminary proxy statement on November 17.  On November 20, the parties to the Delaware suit participated in a phone conference with the Chancery Court.  With respect to the Applica-Harbinger transaction, counsel for Applica stated as follows: "Although we don't have a final proxy, we have responded to all of the SEC's comments, and we are hopeful we will have a final before the end of this week.  We believe that we can close before [December] 29th."  In light of these deadlines, the parties had "agreed to expedition . . . ."  The Chancery Court understandably could not grant a full trial on such short notice, but did allow the parties to set a preliminary injunction hearing for December 13, with expedited document and deposition discovery and a fast-track briefing schedule.

After a significant portion of the document discovery was complete, NACCO unilaterally withdrew its motion for preliminary injunction in a December 1 letter to the Chancery Court.  No further substantive proceedings have occurred in the Delaware suit.

Applica and Harbinger continued to move forward on the late December proxy.  On December 4, Applica circulated the proxy statement to all record shareholders, including NACCO, for the purposes of soliciting shareholder approval of the merger agreement between Applica and Harbinger.  It set December 28 as the date for the meeting of shareholders and November 27 as the record date for voting rights.  Plaintiffs note that SEC Rule 14 and the Securities Exchange Act of 1934 require a proxy statement to include a full and complete description of the background of the proposed merger, including all information relating to the proposed transaction that a reasonable shareholder would consider important in deciding whether to vote in favor of the proposed merger of Harbinger and Applica.  Plaintiffs allege numerous false statements and omissions, including:

8

    1) details from the original NACCO-Applica transaction and the termination of the merger, (¶¶ 76(a), (b), (k), (s), (t), (u), (v), (w), (x), (y), (z));

    2) the allegedly false statements in the Schedule 13 filings (¶¶ 76(c), (d), (e), (j), (l), (m), (n), (o), (p), (q), (r), (aa), (bb), (cc), (ff));

    3) details regarding Harbinger and the Harbinger-Applica transaction (¶¶ 76(f), (g), (h), (i), (dd)); and

    4) the existence of the Delaware lawsuit (¶¶ 76(ee)).

Plaintiffs thereafter launched their own effort to purchase the shares of Applica at $6.50 a share by sending a letter to the Applica Board of Directors. Harbinger responded by increasing its offer to $6.50 per share. A revised proxy statement was filed on December 15 which indicated the new price and that Harbinger cannot vote its shares. The December 15 proxy did not disclose NACCO's bid. (¶ 76(gg)). NACCO then publicly announced a competing all-cash tender offer for Applica at $6.50 a share. It claims that it is at a disadvantage in any such fight as a result of Harbinger's allegedly false Schedule 13D filings, which allowed Harbinger to purchase 40% of the shares at a depressed price of $3.60 per share. Harbinger is thus able to realize a lower total purchase price for all of the shares or to hold out with its 40% of shares.

Plaintiffs filed this action on December 18, 2006, and informed opposing counsel that a motion for Temporary Restraining Order would follow the next day. The motion for TRO was filed and the Court is also in receipt of letters from all of the parties describing the events and procedural history. Plaintiffs bring two counts—one under Section 13(d) based on the Schedule 13 statements by Harbinger and one under Section 14(a) based on the Applica proxy statements.

The Section 13(d) claim alleges that the filings were "materially false and misleading in that . . . they misstate and/or omit material information that must be disclosed." Specifically, Plaintiffs claim that the March 13 and April 13 filings falsely stated that the shares were not held

9

for the purpose of or with the effect of changing or influencing the control of Applica. They claim the 13D filings failed to disclose Harbinger's plans to: "(a) continue to acquire Applica shares; (b) change the board of directors of Applica; (c) effect a merger between Applica and Salton; or (d) otherwise cause Applica to enter into an extraordinary corporate transaction." Plaintiffs claim that as a result of these statements "Harbinger was able to amass improperly a commanding position of the stock of Applica" which it "has arrogated to itself an unfair and illegal advantage." Plaintiffs further allege that "Applica's shareholders, both current and former, including NACCO, have been irreparably injured by Harbinger's conduct because they have been disadvantaged by Harbinger's fraud in the contest for ownership and control of Applica."

The Section 14(a) claim alleges that the December 4 proxy statement includes false statements and failed to disclose material facts. Plaintiffs allege that "[c]onsummation of the transaction outlined in the Applica-Harbinger Proxy Statement would irreparably injure Applica's shareholders, both current and former, including NACCO."

Plaintiffs' Complaint asks the Court to declare that the Schedule 13 filings violate the 1934 Act, enjoin Harbinger and Applica from continuing with the scheduled meeting or consummating the transaction, disgorge Harbinger of its shares in Applica, as well as other relief. Their motion for TRO seeks an order that Defendants be enjoined from consummating the merger and that the shareholders meeting scheduled for December 28 be adjourned.

**DISCUSSION**

Where "there is notice to the other side and an opportunity to be heard, the standard for granting a TRO is the same as the standard for a preliminary injunction." *Rios v. Blackwell*, 345

F. Supp. 2d 833, 835 (N.D. Ohio 2004); *see also P&G v. Bankers Trust Co.*, 78 F.3d 219, 226 ("In issuing a TRO, a district court is to review factors such as the party's likelihood of success on the merits and the threat of irreparable injury."). The Court must consider whether 1) Plaintiffs have made a strong and substantial showing of likelihood of success on the merits; 2) Plaintiffs have shown irreparable injury would result without the injunction; 3) issuance of the injunction would cause substantial harm to others; and 4) the public interest would be served by the injunction. *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564-65 (6th Cir. 1982); *Rios*, 345 F. Supp. 2d at 835.

Likelihood of Success on the Merits

The Court finds that Plaintiffs have not demonstrated a strong likelihood of success on the merits of their Section 13(d)[6] claim. Certain plaintiffs may bring a private right of action for violations of Section 13(d). *Edelson v. Ch'ien*, 405 F.3d 620, 625 (7th Cir. 2005). One form of a Section 13(d) violation is the filing of false or misleading statements in a Schedule 13 filing.[7] *Ind. Nat'l Corp. v. Rich,* 712 F.2d 1180, 1185 (7th Cir. 1983); *Mates v. North Am. Vaccine, Inc.*, 53 F. Supp. 2d 814 (D. Md. 1999). The "traditional requirements for injunctive relief apply to implied causes of action under Section 13(d)." *Edelson*, 405 F.3d at 627.

When Harbinger's filings are viewed in parallel with the unfolding events, the Court

---

[6] Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C § 78m(d).

[7] "A Schedule 13G is similar to a Schedule 13D, but it may be filed only by certain classes of purchasers and only if the purchasers have no intent to change or influence the issuer or to act in concert with others who so intend." *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 616 (2d Cir. 2002).

11

finds it quite unlikely that the filings were false. Harbinger originally took a position in Applica about the same time that Applica announced it was exploring "strategic alternatives to enhance shareholder value." Although such bets obviously turn sour on occasion, this seems an ideal time to acquire a substantial block of Applica stock, for investment purposes only, in anticipation of a merger, buyout or other similar transaction which would boost the stock price. Subsequent purchases and filings into early June are consistent with a pure investment purpose—if the share price remains low, but the purchaser anticipates a substantial rise in share price, it makes sense to continue to buy in.

Importantly, when circumstances changed, so did the Schedule 13 filings. The June 21 filing, which is quoted *supra*, coincided almost exactly with Harbinger gaining an interest in Salton.[8] At that point, Harbinger recognized the possibility of synergies and that they might become active owners. Harbinger reported these possibilities in the June 21 and ensuing Schedule 13 filings.

Barely a month later, NACCO and Applica entered into the merger agreement. Pursuant to that agreement, Harbinger would see its large share of Applica stock fold into the new Hamilton Beach entity. A diluted ownership share in Hamilton Beach is obviously not the outcome Harbinger originally sought when it invested in Applica, and would do nothing to

---

[8] Plaintiffs might argue that the fact that Harbinger obtained an interest in Salton is evidence that the earlier statements in the Schedule 13 filings were false. However, this is just as consistent with Harbinger recognizing an opportunity as of June, and updating its filings immediately thereafter. A Schedule 13 statement would be utterly meaningless if the reporting party had to detail everything it might conceivably do based on unknown or speculative future actions.

promote the synergies Harbinger had announced in its June 21 filing.  It therefore sought other avenues, including originally seeking to reinstate its voting rights, as disclosed in the August 11 Schedule 13D filing.  The August 17 Schedule 13D filing announced other possible options, including communicating with shareholders regarding the Hamilton Beach merger and purchasing their shares.  By September 14, Harbinger had formulated a solid offer and set this out in detail in its 13D filing.  Contrary to Plaintiffs' position, the Court does not perceive any falsity in Harbinger's filings when they are properly viewed alongside unfolding events.

Plaintiffs nonetheless seize on the statement from the September 14 Schedule 13D that "[t]he Reporting Persons have acquired their Shares of the Issuer in order to acquire control of the Issuer."  They characterize this statement as an admission that "acquiring the Shares of the Issuer in order to acquire control of the Issuer" was Harbinger's plan from the outset.  Plaintiffs' argument ignores the immediate context of Harbinger's statement:

> Item 4 of the Schedule 13D *is amended to add* the following information:
>
> The Reporting Persons have acquired their Shares of the Issuer in order to acquire control of the Issuer.  *The Reporting Persons evaluate their ownership of the Shares on a continual basis* including, without limitation, for possible synergies with their current investments.

(Emphasis added).  The highlighted statements indicate that the alleged admission was in fact stating Harbinger's present intent.  Otherwise, Harbinger would "substitute the following information," and it would not have been "evaluating their ownership of the Shares on a continual basis," but instead doing what they had intended from the beginning.  In any event, to the extent there was any ambiguity, Harbinger cleared it up with the October 19 Schedule 13D:

> The sentence of Item 4 of the Amendment No. 7 to the Schedule 13D, dated September 14, 2006, that reads "The Reporting Persons have acquired their Shares of the Issuer in order to acquire control of the Issuer" is hereby deleted in

13

its entirety and replaced with the following: The Reporting Persons have changed their investment intent and now propose to acquire all of the Shares of the Issuer.

The Court will move next to the Section 14(a)[9] claim. The Supreme Court has recognized a private right of action for the breach of Section 14(a), as implemented by SEC Rule 14a-9, which prohibits the solicitation of proxies by means of materially false or misleading statements. *Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1087 (1991). "To state a claim under section 14(a), a plaintiff must aver that (1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004); *see also Vides v. Amelio*, 265 F. Supp. 273, 276 (S.D.N.Y. 2003). "In general, a misrepresentation or omission is considered material if 'there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'" *Tracinda Corp. v. DaimlerChrysler AG*, 364 F. Supp. 2d 362, 414-415 (D. Del. 2005) (quoting *TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)). "Whether or not a statement is material, that is, whether there is a substantial likelihood that the statement or omission would be viewed by the reasonable investor as having significantly altered the total mix of available information, depends on the facts of each individual case." *Cione v. Gorr*, 843 F. Supp. 1199, 1204 (N.D. Ohio 1994).

The Section 14(a) claim is based on an allegation that the proxy statement contains false statements or material omissions. The Court previously split the alleged false statements or

---

[9] Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a).

omissions into four categories: 1) details from the original NACCO-Applica transaction and the termination of the merger; 2) the allegedly false statements in the Schedule 13 filings; 3) details regarding Harbinger and the Harbinger-Applica transaction; and 4) the existence of the Delaware lawsuit. Plaintiffs also allege that the December 15 proxy did not disclose NACCO's $6.50 bid.

As for category 2, the Court already held that Plaintiffs are not likely to demonstrate that there was anything improper in the Schedule 13 filings. Thus, a reasonable investor is not likely to consider the filings important in deciding how to vote. Category 4 is the fact of the Delaware suit and Categories 1 and 3 consist of matters at issue in the Delaware suit—i.e., Applica's failure to comply with its contract (Count I), Harbinger's fraud and tortious interference with the NACCO–Applica merger (Counts II and III), and the civil conspiracy between Harbinger and Applica (Count IV). The Delaware Chancery Court afforded Plaintiffs an opportunity to resolve these matters on a preliminary basis, with ample time ahead of the date of the meeting. Despite their knowledge that the meeting would be held in late December, and after substantial production of documents by Defendants, Plaintiffs cancelled the preliminary injunction hearing. Considering that Plaintiffs did not consider it important (or advisable) to decide these issues prior to the meeting, the Court is confident that these matters are not material for purposes of the meeting. This leaves only NACCO's last-ditch offer of $6.50 at issue. The fact is that Harbinger has also offered $6.50 a share on a merger agreement that has been pending for months. Applica could reasonably view Plaintiffs' recent conduct as obstructionist at best. The Court simply does not believe that any of the alleged omissions or statements are material under Section 14(a).

In sum, Plaintiffs have failed to demonstrate a likelihood of success on either of their

claims.

### Irreparable Harm

The Court finds Plaintiffs' own delays to be the most convincing evidence that they will not experience irreparable harm on their federal claims if the December 28 meeting is allowed to go forward. *See, e.g., Forry, Inc. v. Neundorfer, Inc.,* 837 F.2d 259, 267 (6th Cir. 1988); *Young v. Lumenis, Inc.*, 301 F. Supp. 2d 765, 772 (S.D. Ohio 2004) (explaining that "a substantial period of delay militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief"); *Wells Fargo & Co. v. WhenU.com*, Inc., 293 F. Supp. 2d 734, 771-772 (E.D. Mich. 2003) ("Plaintiffs' delay in seeking a preliminary injunction undermines their allegation of irreparable harm."); *Advisory Information & Management Systems, Inc. v. Prime Computer, Inc.*, 598 F. Supp. 76, 89 (D. Tenn. 1984).[10]

Plaintiffs have known the substance of their federal claims at least since they filed their claims in Delaware Chancery Court. As for Count I of this action, the Schedule 13 filings at issue were filed on or before October 19. Many allegations of the Delaware Complaint, and a number of claims for relief, are based on the same Schedule 13 filings. As for Count II of this action, the original proposed proxy statement was filed on November 2. The Delaware Complaint raises the same issues as Count II here:

> On November 2, 2006, Applica filed the Harbinger Proxy Statement. That filing (a) revealed Applica had misled Plaintiffs regarding its contacts with Harbinger

---

[10] A number of these cases involve preliminary injunctions in trademark disputes. This is relevant insofar as the delay in these cases was sufficient to overcome the normal presumption in favor of irreparable harm in trademark cases.

and Harbinger's intentions; (b) failed to disclose Harbinger's false Schedule 13D submissions; (c) failed to disclose Applica's breaches of the Hamilton Beach Merger Agreement; and (d) failed to disclose Plaintiffs' claim that, as a result of these breaches, Applica's termination of the Hamilton Beach Merger Agreement was improper.  The Harbinger Proxy Statement is thus itself materially false and misleading.

Although the Delaware claims for relief do not focus directly on the proxy statement, the underlying issues—i.e., the matters Plaintiffs now claim are material—are largely the same as those addressed in the Delaware action.  Plaintiffs have able counsel and were certainly well aware of their federal claims in early to mid November.  Plaintiffs knew of Harbinger's strategic advantage (supposedly gained by its Schedule 13 filings) and knew the substance of the proxy statement well over a month ago.[11]  Their failure to file federal claims at that time thus speaks volumes as to their present claims of irreparable harm.[12]

Indeed, Plaintiffs had an opportunity to have almost all of the same claims addressed by the Delaware Chancery Court at the preliminary injunction hearing scheduled for December 13. Nearly all of the Schedule 13 issues would have been addressed.  The underlying statements or

---

[11] Plaintiffs note their recent offer of $6.50 and claim that only after Harbinger's match of their offer were they injured.  This is belied by their Complaints in both actions.  Any injury comes from Harbinger's strategic advantage in already holding 40% of the shares purchased at $3.60.  It is clear from the Complaints that Plaintiffs were well aware of this advantage for months.  Their strategic choice to make a bona fide counter offer (if that was indeed the reason for the offer) so late in the game cannot be used to manufacture irreparable harm.

[12] The Court is aware that delays cited by courts may often be for months.  What is important here is the relative delay.  If their federal claims were truly urgent, rather than a try at gamesmanship, the case could have been prepared and filed at least a number of weeks ago.  Here, Plaintiffs delayed for weeks, only to file a TRO 9 calender days before the scheduled meeting.

omissions at issue in the Section 14(a) proxy statement claim would largely have been addressed.  Plaintiffs unilateral cancellation of that hearing again speaks volumes as to their present claims of irreparable harm.

### Harm to Others

Contrary to Plaintiffs' claims, a delay in the meeting is likely to result in harm to Defendants.  Plaintiffs' Delaware lawsuit has already put numerous defense lawyers to work around the clock responding to extensive short-term discovery requests over the Thanksgiving holiday, only to have Plaintiffs unilaterally cancel the preliminary injunction hearing.  Defendants are greeted in the next holiday season with last-ditch tactical moves including a complex federal lawsuit filed on an impossibly short time schedule, despite Plaintiffs' awareness of their claims at least a month before.  Simply put, delay means further tactical moves, resulting in higher transaction and legal costs, resulting in a higher likelihood that a transaction favorable to Applica, Harbinger and the shareholders (assuming they approve) will not occur.

### The Public Interest

Plaintiffs claim that the public interest favors full disclosure to shareholders and that corporate transactions occur without material misrepresentations or nondisclosure of information.  Because the Court does not find a likelihood of material misrepresentation or nondisclosure, this appeal to the public interest does not aid Plaintiffs.

### Laches

In the alternative, the Court also finds that laches bars Plaintiffs' requested injunction.  As a court facing a similarly-delayed TRO noted:

> An injunction is an equitable remedy, and as such, the equitable defense of laches is applicable. The " 'doctrine of laches' is based upon the maxim that equity aids

18

> the vigilant and not those who slumber on their rights. It is defined as neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as bar in court of equity." Blacks Law Dictionary, 875 (6th ed. 1990). "Laches requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 5 L. Ed. 2d 551, 81 S. Ct. 534 (1981) (quoted in *United States v. Weintraub*, 613 F.2d 612, 619 (6th Cir. 1979), cert. denied, 447 U.S. 905, 64 L. Ed. 2d 854, 100 S. Ct. 2987 (1980)). *See Kay v. Austin*, 621 F.2d 809, 813 (6th Cir. 1980) (barring plaintiff's claim for equitable relief due to laches).

*Advocacy Org. for Patients & Providers v. Mercy Health Servs.*, 987 F. Supp. 967, 970 (E.D. Mich. 1997).

As in this case, the *Advocacy* plaintiffs were aware of a proposed merger well before the TRO was filed and were involved in a related action. Nonetheless, they waited until the eleventh hour to file a lengthy complaint and TRO with the court. This met the first laches element of delay. *Id.* This Court similarly finds the first element met here. The *Advocacy* Court next considered prejudice to the defendant. Interference with the merger would prejudice the defendants. *Id*. As this Court has already held *supra*, prejudice to Defendants exists in this case. For these reasons, the Court also holds that the requested equitable relief is barred by the doctrine of laches.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for TRO is DENIED. For the same reasons, the Motion for Preliminary Injunction is DENIED. Finally, because the motions are denied, the Court does not perceive a need for expedited discovery. Accordingly, the Request for an

Expedited Pre-Trial Conference and an Expedited Discovery Schedule is also DENIED.  The Court will schedule a Case Management Conference in due course.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  12/20/06

20